UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
AJMEL A. QUERESHI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0393

February 13, 2023

LETTER TO COUNSEL

RE: *James T. v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-22-00574

Dear Counsel:

On March 9, 2022, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. I have considered the parties' cross-motions for summary judgment, ECF Nos. 12, 14, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, for the reasons discussed below, I will deny Plaintiff's Motion for Summary Judgment and grant the SSA's Motion for Summary Judgment.

## I.     The History of this Case

Plaintiff filed his claim for financial assistance on September 10, 2019, alleging a disability onset date of June 6, 2019. ECF No. 8-3 at 24. The Social Security Administration denied Plaintiff's claim initially and upon reconsideration. *Id*. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically on July 28, 2021. *Id*. After that hearing, the ALJ determined Plaintiff did not have a disability as defined by the Social Security Act during the relevant time frame. *Id*. at 36. Since the Appeals Council denied Plaintiff's request for review, *id.* at 1, the ALJ's decision reflects the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ found that Plaintiff suffered from the severe impairments of "affective disorder, anxiety, tic disorder, obesity and loss of central visual acuity[.]" ECF No. 8-3 at 27. Despite these impairments, the ALJ determined that Plaintiff retained the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant could lift, carry, push and pull fifty pounds occasionally and twenty-five pounds frequently. He could sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight-hour workday. He could only frequently climb ramps and stairs, balance, stoop, kneel, crouch or crawl but never climb ladders, ropes and scaffolds. He could only occasionally be exposed to moving

Case 8:22-cv-00574-AAQ   Document 15   Filed 02/13/23   Page 2 of 7

*James T. v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-22-00574
February 13, 2023
Page 2

> mechanical parts and unprotected heights. Due to a loss of vision in his right eye, he could never perform tasks requiring peripheral vision, near acuity, far acuity or accommodation on the right. He could only occasionally perform tasks requiring depth perception. The claimant is limited to simple, routine tasks, but not at a production rate pace. He could only occasionally adjust to changes in workplace settings. The claimant is limited to applying common sense understanding to carry out uninvolved written or oral instructions. He is limited to dealing with problems involving a few concrete variables in or from standardized situations. He is limited to working in two-hour increments following which the individual would need a break of at least ten minutes. These breaks can be accommodated by customary or normal work breaks.

*Id.* at 29. In formulating this RFC, the ALJ's analysis focused on Plaintiff's mental impairments, *id.* at 30, which had also been the focus of his counsel's arguments during the hearing. ECF No. 8-3 at 52 ("I believe that the only severe impairments we're talking about are the mental impairments . . ."). The ALJ began by considering Plaintiff's testimony that he suffers from serious depression. *Id.* at 30. Specifically, Plaintiff testified that:

> he cannot work because it is sometimes hard for him to get out of bed in the morning. He usually sleeps until 2:30 pm after going to bed between ten and twelve the night before. He testified that there are days he does not get out of bed at all. When he was working, he said he had a difficult time getting out of bed to go to work. There were times that he left for work and turned around and came home because he could not deal with working an eight-hour day.

*Id.* While the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff described, the other evidence in the record did not support Plaintiff's claims regarding their persistence, intensity, and limiting effects. *Id.* The ALJ noted that he was described as being "organized and analytical" on April 21, 2020. *Id.* at 31. At that time, Plaintiff stated that his depression level had stabilized over the past six months, as he had settled into a shelter and generally felt more comfortable in his environment. *Id.* On October 21, 2020, Plaintiff was described as having normal speech, thought processes, and association. *Id.* "He was alert and oriented with intact short term and long-term memory. Both his tic disorder and depression were assessed as stable and improving." *Id.* Finally, the ALJ noted that Plaintiff said that he was able to cook and clean, had worked part-time jobs since the alleged onset date, was able to maintain relationships with family and friends, and was able to perform math and manage his own funds. *Id.*

Case 8:22-cv-00574-AAQ   Document 15   Filed 02/13/23   Page 3 of 7

*James T. v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-22-00574
February 13, 2023
Page 3

The ALJ then went on to specifically explain the pace limitation included in the RFC:

> the claimant has not met his burden in proving he cannot remain on pace long enough to perform a simple task. To be clear, the claimant has no significant pace limitation when performing this adopted residual functional capacity assessment. Of course, another way of saying the same thing is the claimant would have a pace limitation if doing more than the specifics of the adopted residual functional capacity. For example, if he were in an occupation which had tasks requiring performing more than four steps and/or non-routine tasks in a work environment where he would have constant decision making, perform complex tasks, and be called upon to adapt to frequent changes in the work setting, then, yes, he may very well have problems maintaining pace, but that kind of work is precluded by the adopted residual functional capacity assessment. Thus[,] while the claimant has a moderate limitation in concentration persistence and pace, it is a limitation as applied to more complex and detailed tasks rather than to the simpler tasks to which he would be limited to in this residual functional capacity, for which he would have no such limitations.

*Id.* at 33-34. This explanation built on his colloquy with the Vocational Expert (VE) during the hearing, when she clarified that the term "production rate work" indicates an occupation in which an individual is "paid on price rate or quota[,]" for example, "a tire builder position." *Id.* at 70.

Based on the aforementioned RFC, the ALJ determined that the Plaintiff was unable to perform past relevant work as a deli clerk or call center representative. *Id.* at 34. However, the ALJ determined that Plaintiff did not have a disability because he could perform other jobs that exist in significant numbers in the national economy. *See id.* at 34-35 (noting that Plaintiff could perform work as a laundry laborer, machine feeder or agricultural inspector grader). As a result, the ALJ denied Plaintiff's claim for disability benefits. *Id.* at 36.

## II.    Plaintiff's Argument on Appeal

On appeal, Plaintiff argues that the ALJ: 1) "failed to provide any explanation of what he meant by the term 'production pace,'" as included in the RFC, *id.* at 6; 2) "failed to set forth a narrative discussion setting forth how the evidence supported *each conclusion*, citing specific medical facts and nonmedical evidence[,]" *id.* at 11; and 3) "erroneously evaluated the Plaintiff's subjective complaints." *Id.* at 14. For the reasons discussed below, Plaintiff's arguments do not support remand under the applicable precedents.

### A.  Use of the Term "Production Pace"

Case 8:22-cv-00574-AAQ   Document 15   Filed 02/13/23   Page 4 of 7

*James T. v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-22-00574
February 13, 2023
Page 4

In *Thomas v. Berryhill*, the United States Court of Appeals for the Fourth Circuit vacated the ALJ's decision, in part, because the RFC included the phrase "production rate or demand pace," which was never defined or explained. 916 F.3d 307, 312 (4th Cir. 2019). The Court found that the lack of definition made it impossible to assess whether such limitations were supported by substantial evidence, a requirement when reviewing an ALJ's determination. *Id*. Similarly, in *Perry v. Berryhill*, the Court remanded because they could not assess "whether a limitation to 'non-production oriented work settings[s]' properly accounts for [Plaintiff's] impairments . . . " 765 Fed.Appx. 869, 870 (4th Cir. 2019). Finally, this Court in *Ansah v. Saul* concluded that remand was appropriate where the ALJ failed to define "no strict production quotas." No. 1:19-cv-02503-JMC, 2021 WL 962702, at *4 (D. Md. Mar. 12, 2021). There, the Court likewise determined the missing definition "frustrates meaningful appellate review." *Id.*

This case is distinguishable from the cases cited above in that the ALJ, both in his decision, as well as his interactions with the VE at the hearing, clarified how he was defining the term. *See Jennifer C. v. Saul*, No. GLS 20-1354, 2021 WL 1990069, at *4 (D. Md. May 18, 2021) ("the ALJ never defined the phrase 'no production pace work,' either in her opinion or at the hearing."). As the VE explained to the ALJ, the term was meant to describe a situation in which an individual is paid based on the number of pieces of work they produce – for example, a tire builder. ECF No. 8-3, at 35. Likewise, the ALJ's explanation in his decision clarified that while Plaintiff could work on an assembly line if the task he was performing was relatively simple – for example, requiring less than four steps – he does not have the ability to perform more complex work that requires constant decision making or adapting to frequent changes.[1] *Id*. at 33-34. Although the explanation at times appears inconsistent, the explanation is sufficient to serve the ultimate purpose of the requirement – to determine whether the RFC is supported by "substantial evidence." *Thomas*, 916 F.3d at 313.

### B. Requirement of a Narrative Discussion

When determining the RFC of the claimant, the ALJ must incorporate a function-by-function assessment of their ability to do work-related activities. Social Security Ruling 96-8p. The Fourth Circuit has held that such a function-by-function assessment requires ALJs to evaluate "the claimant's ability to perform the physical functions listed in [the regulations]," including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions [that]

---

[1] Plaintiff also argues that "occupations where individuals are working on conveyors are often inconsistent with limitations on fast pace, assembly lines, and production quotas." ECF No. 12-1, at 10. This argument is based on a misreading of the ALJ's RFC. The ALJ did not hold that Plaintiff could never work on an assembly line or on a fast pace, but could not work in such an environment if it required complex tasks, constant decision making or adapting to frequent changes. In essence, the concern for the ALJ was not the speed or format of the work, but its complexity. *See* ECF No. 8-3, at 29.

Case 8:22-cv-00574-AAQ   Document 15   Filed 02/13/23   Page 5 of 7

*James T. v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-22-00574
February 13, 2023
Page 5

may reduce [a claimant's] ability to do past work and other work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). The RFC analysis should describe "how the evidence supports each conclusion reached by the ALJ by citing to evidence and articulating all inferences drawn therefrom." *Nancy G. v. Kijakazi*, No. GLS 20-3440, 2022 WL 363824, at *3 (D. Md. Feb. 4, 2022) (citing *Thomas,* 916 F.3d at 312-13); *see also Dowling*, 986 F.3d at 387 ("[E]very conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it.") (quoting *Thomas*, 916 F.3d at 311). "This function-by-function assessment is not the same as an assessment of the intensity and persistence of Plaintiff's symptoms, the latter of which is outlined in SSRs 96-7p and 16-3p." *Henderson v. Kijakazi*, No. AAQ-20-3346, 2022 WL 1555408, at *2 (D. Md. May 17, 2022). As explained in *Dowling*, the plaintiff's symptoms are relevant to the RFC evaluation, but an RFC assessment is "a separate and distinct inquiry from a symptom evaluation." 986 F.3d at 387. Treating the two as the same can lead to error, *id.*, and may warrant remand. *Britt v. Saul*, 860 Fed.Appx. 256, 262 (4th Cir. 2021). Remand will be appropriate where the ALJ "fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Although Plaintiff's Motion raises complaints regarding the lack of narrative discussion supporting the physical and mental limitations in the ALJ's RFC, ECF No. 12-1, at 11-12, as Plaintiff conceded before the ALJ, his claim for disability related assistance was limited to the impact of his mental impairments. Accordingly, I shall focus on those in this Opinion. *Delonte C. v. Kijakazi*, No. TMD 20-2436, 2021 WL 4391089, at *4 (D. Md. Sept. 24, 2021) (quoting *Mascio,* 780 F.3d at 636) ("[A] per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis 'is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.''").

It is apparent that the ALJ did not conduct the proper function-by-function analysis regarding the impact of Plaintiff's mental impairments. The ALJ's analysis began with a global recounting of Plaintiff's testimony, *id.* at 30, and medical records, *id.* at 30-33, a discussion of the applicable legal standard, and then a discussion regarding the Plaintiffs' limitations as to "concentration, persistence, and pace." *Id.* at 33. The ALJ's conclusions regarding Plaintiff's psychological limitations were grouped together as opposed to being paired with the evidence supporting each, as required by an explicit function-by-function analysis.

Nonetheless, this failure does not automatically require remand. The ALJ's decision includes sufficient discussion for this Court to glean the ALJ's reasoning regarding Plaintiff's psychological limitations. *See Britt*, 860 Fed.Appx. at 262 ("Meaningful review is frustrated – and remand necessary – only where we are unable to fathom the [ ] rationale in relation to evidence in the record." (internal citations and quotation marks omitted)). As the ALJ noted, more recently, the Plaintiff's depression had stabilized, he felt more comfortable, and his speech and thought

Case 8:22-cv-00574-AAQ   Document 15   Filed 02/13/23   Page 6 of 7

*James T. v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-22-00574
February 13, 2023
Page 6

processes had normalized. ECF No. 8-3, at 31. The ALJ relied on the medical opinion of a state psychological consultant who noted the Plaintiff only has "mild limitations in understand[ing], remember[ing], or apply[ing] information and moderate limitations in the remaining functional areas." *Id.* at 32. As a result, the state consultant concluded Plaintiff could perform "simple routine work as his psychological limitations are stable with treatment and medication." *Id.* Additionally, the ALJ noted a 2014 opinion from a state ALJ which found Plaintiff could perform simple, routine tasks. *Id.* at 32-33. Finally, the ALJ noted that Plaintiff was able to perform simple household chores and personal tasks. *Id.* at 31. This discussion adequately provides a basis for the Court to assess how and why the ALJ concluded that the Plaintiff could perform simple tasks, in standardized situations, carrying out simple instructions, while needing breaks of at least ten minutes at least every two hours. These limitations accord with the findings of other individuals and mirror the tasks Plaintiff testified he performed at home. While the Court may have weighed the evidence differently were it assessing the evidence for the first time, ultimately, the explanation is sufficient for the Court to assess the basis for the ALJ's RFC.

### C. Evaluation of Subjective Complaints

In evaluating the intensity, persistence and limiting effects of the claimant's symptoms, an ALJ may consider objective medical evidence, 20 C.F.R. § 404.1529(c)(2), as well as type, dosage, effectiveness, and side effects of any medication, and treatment, other than medication, among other factors. 20 C.F.R. § 404.1529(c)(3). Thus, while a plaintiff may rely exclusively on subjective evidence in proving in evaluating the intensity, persistence and limiting effects of the claimant's symptoms, where objective medical evidence exists, the ALJ may consider it so long as objective evidence is not "effectively required." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95-96 (4th Cir. 2020) (quoting *Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006)).

Here, as the ALJ noted in his decision, objective medical evidence showed that Plaintiff suffered from affective disorder, anxiety, tic disorder, obesity and loss of central visual acuity. ECF No. 8-3, at 27. Contrary to Plaintiff's argument, the ALJ did not fault Plaintiff for the lack of objective evidence substantiating his claim regarding the limiting effects of his impairments, but rather – consistent with federal regulations – found that Plaintiff's claims regarding the impairments' limiting effects were contradicted by objective medical evidence in the record. *See id.* at 30 ("[T]hese symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.").

Plaintiff's citation to *Arakas* is unpersuasive in this specific case. In *Arakas*, the ALJ improperly penalized the claimant for being unable to present objective evidence supporting his complaints regarding fibromyalgia. The Fourth Circuit reasoned that, when a claimant alleges certain limitations such as those related to fibromyalgia or other conditions that do not produce objective evidence, an ALJ could not discredit a claimant's subjective complaints merely because they were not supported by objective evidence. In this case, Plaintiff was able to present objective

evidence in support of his diagnoses, which the ALJ considered. As the ALJ noted, Plaintiff had been diagnosed with depression, ECF No. 8-3, at 31, had been prescribed medication for his anxiety, *id.*, had a BMI classifying him as obese, *id.* at 30, had noticeable tics, *id.* at 32, and a visual impairment in his right eye, *id*. This readily distinguishes this case from *Arakas*. *See Arakas*, 983 F.3d at 97 ("While the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints."). Accordingly, I cannot conclude, on this basis, that the ALJ's decision was not supported by substantial evidence.

### D. Conclusion

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED. Despite the informal nature of this letter, it is an Order of the Court and should be treated accordingly. An implementing order follows.

So ordered.

Sincerely,

/s/
Ajmel A. Quereshi
United States Magistrate Judge